UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED

MAR 0 6 2017

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
                        DEPUTY

ROLAND FUENTES, JR.,                    )
                        Plaintiff,      )
                                        )
v.                                      )       Civil Case No. 15-cv-1010 (RCL)
                                        )
CITY OF SAN ANTONIO FIRE                )
DEPARTMENT,                             )
                        Defendant.      )

## <u>MEMORANDUM OPINION</u>

### I.    INTRODUCTION

Plaintiff Roland Fuentes, Jr., a Hispanic male, was a firefighter with the San Antonio Fire Department for almost thirty-five years. He was certified as a paramedic in 1993, serving the City of Antonio until he was assigned to administrative duty on February 25, 2012. He was transferred back to his paramedic unit in May 2012, but was again transferred to supply and logistics in June or August 2012. He retired in May 2014. Fuentes now challenges his assignment to administrative detail as unlawful violations of Title VII and the Genetic Information Nondiscrimination Act (GINA). Before the Court is the Fire Department's motion [ECF No. 21] for summary judgment on those claims. The Court also considers plaintiff's response [ECF No. 24] and defendant's reply [ECF No. 27]. For the reasons set forth below, the motion for summary judgment will be granted.

### II.   BACKGROUND

In 2010, the Fire Department announced the development of a Wellness Program, designed to provide early detection of serious medical conditions and encourage better health among its employees. The program requires all uniformed personnel to undergo a physical by either a

physician hired by the department or an outside physician. The program is mandatory, as provided for in the Collective Bargaining Agreement between the City of San Antonio and the International Association of Firefighters, Local 624. After Fire Chief Charles Hood issued the General Order implementing the program on December 14, 2010, the Fire Department scheduled a mandatory meeting to inform employees that participation in the program was mandatory. In 2011, the Fire Department began scheduling employees for physical examinations. At the conclusion of the year, the Department identified all employees who had not completed an examination. This included over 1,000 employees. In early 2012, a list was compiled of those employees, and the Fire Department contacted them to schedule "make up" examinations.

Based on the results of the examination, an employee is designated to one of three duty statuses: Full Duty, Conditional Duty, or Alternate Duty. Aff. Horan 2. The physical examinations mandated by the Wellness Program include:

1) Obtaining vital signs (temperature, blood pressure, pulse and oxygen saturation);
2) Obtaining body composition analysis (body weight, fat percentage and body mass index);
3) Obtaining vision, hearing and spirometry assessments;
4) Blood draw for:
   a. CBC,
   b. Chem 12 (complete metabolic panel),
   c. Lipid panel (cholesterol assessment), and
   d. One time screen for Hepatitis C and HIV for baseline purposes;
5) Urinalysis; and
6) Chest X-Ray (every five years)

*See* Statement from Dr. Edwards [ECF No. 21-11]. The program also required a stress electrocardiogram for members over 40 years old. *See* December 14, 2010 General Order [ECF No. 21-2]. On March 12, 2012, Chief Hood amended the Wellness Program by issuing another General Order. *See* March 12, 2012 General Order [ECF No. 21-4]. The amendments included

requiring a stress electrocardiogram "every third year," and eliminated the qualification that the stress test only applied to members over 40 years old. *Id.* However, according to Dr. Edwards, "[n]one of the tests that are administered to firefighters through the Wellness Program are genetic tests." ECF No. 21-11.

At the time the Wellness Program was enacted, Fuentes held the rank of engineer and worked as a paramedic in the emergency services (EMS) division. On July 20, 2011, Fuentes refused to participate in the program because he objected to "the dissemination of [his] personal medical History and that of [his] family [as] an invasion of [his] privacy." Exhibit 1 [ECF No. 24-2] p. 43. Fuentes was included in the list of employees who were ordered to schedule "make up" examinations in February 2012. Aff. Horan [ECF No. 21-1] 2; Horan E-Mail [ECF No. 21-5]; Horan Depo. [ECF No. 24-3] 32. Fuentes again refused to comply with the Wellness Program requirements. *Id.* On February 17, 2012, Chief Horan, who was in charge of personnel services at the time, ordered Fuentes to be placed on administrative duties. *Id.* Fuentes filed a complaint with the Equal Opportunity Employment Commission on April 18, 2012 alleging discrimination under Title VII and GINA. EEOC Notice, Def.'s Exhibit B-3 [ECF No. 21-8].

Fuentes remained on administrative duties until May 2012, when he notified the Fire Department that he would receive a physical examination by his own doctor. Aff. Horan 2; *see also* Fuentes Depo. [ECF No. 24-2] 31-32. He was briefly transferred back to his paramedic unit. However, while Fuentes was examined by his personal physician, he refused to provide the actual test results—including the blood work and x-rays—to the Fire Department. Fuentes Depo. [ECF No. 24-2] 31-32. Around June 6, 2012, Fuentes was again placed on administrative detail for failure to comply with the Wellness Program. *See* EEOC Amendment [ECF No. 21-9] ("On June 6, 2012, I was notified by Captain Joseph Hemann that I was being re-assigned from my Paramedic

3

duties to work in supply and logistics for refusing to provide the Department with the results from my recent physical examinations with my private physician."). Fuentes retired in May 2014.

Fuentes filed this suit on November 17, 2015. Compl. [ECF No. 1]. Fuentes claims that the Fire Department discriminated against him on the basis of his national origin, in violation of Title VII of the Civil Rights Act of 1964, and in retaliation for engaging in protected activity under GINA. Fuentes claims that this unlawful discrimination resulted in lost opportunity to receive overtime pay. Compl. [ECF No. 1] 3, ¶ 8. He also states that other white employees were not similarly assigned to administrative duties when they refused to comply with the Wellness Program. *Id.* at 4.

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party bears the burden of establishing the lack of a genuine issue of material fact. *Id.* "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the movant does not bear the burden of proof at trial, he is entitled to summary judgment if he can point to an absence of evidence to support an essential element of the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Similarly, a movant without the burden of proof at trial may be entitled to summary judgment if sufficient evidence "negates" an essential element. *Id.*

A fact is material if it could affect the outcome of a case. *Anderson*, 477 U.S. at 247. A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id.* Once the moving party demonstrates a lack of an issue of material fact, the burden passes to the nonmoving party to produce evidence or raise issues of fact for trial. *See Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). To survive summary judgment, a nonmoving party must present specific facts or evidence that would allow a reasonable factfinder to find in his favor on a material issue. *Anderson*, 477 U.S. at 247. However, merely asserting a factual dispute or conclusory denials of the allegations raised by the moving party is insufficient; the nonmoving party must come forward with competent evidence. *Id.* at 249-250. The nonmoving party may set forth specific facts by submitting affidavits or other evidence that demonstrates the existence of a genuine issue. *Id. See also* Fed. R. Civ. P. 56(c). Competent evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in her favor. *Id.*

## IV.     ANALYSIS

The Fire Department argues that it is entitled to summary judgment as a matter of law because "there is no evidence or insufficient evidence to support each element of each of Plaintiff's claims." Summ. J. Mot. [ECF No. 21] 1. Alternatively, the Fire Department argues that the evidence "does establish the Fire Department's legitimate business reason for each action taken with respect to Plaintiff's employment, and there is no evidence that such reasons are pretextual." *Id.* The Court will consider the Title VII claims and the GINA claims separately.

### a.  Title VII

Title VII cases are conducted under a burden-shifting framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In a Title VII case,

plaintiffs must first establish a prima facie case of discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). The burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse action. *Id.* The burden then shifts back to the plaintiff to establish that the legitimate reasons offered were not the true reasons, but merely pretext for discrimination. *Id.*

To establish a *prima facie* claim of discrimination under Title VII, plaintiff must establish that he (1) is member of protected class, (2) was qualified for position, (3) was subject to adverse employment action, and (4) was treated less favorably than other similarly situated employees, who were not members of the protected class, under nearly identical circumstances. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

The Fire Department argues that plaintiff cannot establish two elements of the *prima facie* case for national origin discrimination under Title VII: (1) adverse personnel action, and (2) that other similarly situated employees outside the class were treated more favorably under nearly identical circumstances.

### i. There is evidence that Fuentes was subjected to an adverse personnel action

Traditionally, adverse employment actions include decisions affecting a significant change in employment status, such as hiring, firing, granting leave, demoting or failing to promote, assignment with significantly different responsibilities, or decisions changing benefits or compensation. *See Burlington Indus., Inc. v. Ellerth*, 118 S.Ct. 2257, 2268 (1998). This includes demotions or transfers to an objectively worse position, such as one that is less prestigious or less interesting or provides less room for advancement. *Alvarado v. Texas Rangers*, 492 F.3d 605, 613

(5th Cir. 2007). Further, in the retaliation context, an adverse action includes any action that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405 (2006); *McCoy v. Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007).

The Fire Department argues that there is no evidence that Fuentes was subjected to an adverse action. Specifically, the Fire Department claims that while Fuentes was placed on administrative duty there is no evidence that this assignment was less interesting, or less prestigious, or resulted in a loss of promotional activity. Summ. J. Mot. 8. "Fuentes' own perception that the assignment was less prestigious is not sufficient to establish this element—there must be some objective evidence, which there is not." *Id.* In fact, there is. Fuentes indicates that his assignment to administrative detail was an objectively worse position because it resulted in a loss of overtime pay. Fuentes Depo. [ECF No. 24-2] 34-35; Horan Depo. [ECF No. 24-3] 35. In an attached exhibit, Fuentes points out that his wages went from $101,919.00 annually to $78,223.82 in 2012 and $69,729.00 in 2013 as a result of being placed in administrative detail. Pl.'s Exhibits 4-6 [ECF Nos. 24-5, 24-6, 24-7]. Further, this might well dissuade reasonable firefighters from making or supporting charges of discrimination in the workplace. Thus, there is ample evidence raising an issue of material fact as to whether Fuentes suffered from an adverse employment action.

### ii. There is no evidence of similarly situated employees outside the class who were treated more fairly under nearly identical circumstances.

An employee who proffers a fellow employee as a comparator must demonstrate the employment actions were taken under <u>nearly identical circumstances</u>. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held

the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) "[E]mployees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated." *Id.* at 259-60. If the difference between the plaintiff's conduct and that of the employee being compared accounts for the difference in treatment, then the employees are not similarly situated. *Id.*

The Fire Department argues that there is no evidence that similarly situated employees outside the class were treated more favorably under nearly identical circumstances. Summ. J. Mot. 8. In his complaint, Fuentes offers a comparison with B.T. McEnery, a white male employee who was non-compliant with the Wellness Program but was not placed on administrative duty. Compl. 3-4. Rather, during the relevant time, McEnery was promoted from Captain to District Chief. *Id.*; *see also* Aff. Horan 3. Fuentes, on the other hand, held the rank of engineer and served as an EMT paramedic when he was placed on administrative duties. Horan Depo. [ECF No. 24-3] 33. The Fire Department argues that McEnery was not a similarly situated employee because of the differences in rank. Summ. J. Mot. 8-9. According to the Fire Department McEnery's duties as District Chief were primarily administrative and Fuentes' were not. Further, according to the Fire Department, McEnery eventually complied with the General Order, except for a stress test.[1] In

---

[1] Stress tests are no longer required annually. By the end of 2011, McEnery had completed a physical but not a stress test. Horan Aff. 3. He had also filed an EEOC complaint regarding the Wellness Program. A decision was made to waive the stress test until the EEOC ruling and the next round of physicals were scheduled. In October 2011, McEnery was promoted to District Chief. *Id.* When McEnery was required to undergo another physical in 2013, McEnery challenged the necessity of the stress test. McEnery Decl., Pl.'s Exhibit 3 [ECF No. 24-4] p. 4. McEnery inquired whether he was required to take a stress test and was told it was required. However, when he called to schedule a test, the Fire Department did not have a doctor available. *Id.* He was not placed on administrative duty at the time because he had attempted to comply with the requirements but the Fire Department lacked the personnel to perform the test. Aff. Horan 3; *see also* Martinez E-Mail, Pl.'s Exhibit 3 [24-4] ( "[D]ue to the fact that the Wellness Doctor recently resigned, you will not be removed from your operational assignment on Mary 3rd but will instead remain on Conditional Duty until further notice.").

short, the Fire Department argues that McEnery had different work responsibilities and committed dissimilar violations of the Wellness Program, and those differences account for the disparate treatment.

The evidence presented shows that the circumstances regarding McEnery and Fuentes were not nearly identical. According to evidence from both parties, McEnery objected to the program in March 2011. Aff. Horan 3; Horan Depo. Exhibit 8 [24-3] p. 31. At the time that McEnery objected to the program, nearly 1,600 employees had still not completed the program. Aff. Horan. 3. Further, McEnery had filed an EEOC complaint, and a decision appeared imminent. *Id.* Not wanting to prematurely discipline an employee, particularly while hundreds of employees had yet to comply with the program, the Fire Department did not place McEnery on administrative duties. *Id.* Similarly, the Fire Department did not immediately discipline Fuentes when he sent the July 2011 letter objecting to the program. *Id.* at 2. Eventually, McEnery agreed to comply with the Wellness Program. In contrast, Fuentes continued his objection to the Wellness Program well into 2012, nearly a year after his initial objections and after the last of the Fire Department's employees had been scheduled for exams. *Id.* Fuentes never complied with the program. Thus, Fuentes has failed to establish that McEnery committed similar violations of the policy. While Fuentes argues that McEnery's refusal to complete the stress test is a similar violation, the evidence shows that McEnery attempted to comply while Fuentes consistently refused to do so.

Fuentes has also presented no evidence that Fuentes' work responsibilities or duties were similar to McEnery's. As pointed out by the Fire Department, the evidence shows that McEnery's duties were largely—if not primarily—administrative in nature. *See* Aff. Horan 3 ("As McEnery's duties are administrative in nature, he was not placed on administrative duties and no further action was taken against him pending a final determination from the EEOC."). It is also unclear whether

McEnery worked as a Captain or District Chief within the fire division or EMS division. Horan testified that there are differences in job duties between fire divisions and EMS divisions. Horan Depo. 37.  Plaintiff has presented no evidence that the job duties of McEnery and Fuentes were similar, or that they worked within the same division of the Fire Department, or that they worked under the same supervisors.[2]  The only evidence to which Fuentes can point to establish similarity is that both McEnery and Fuentes were employed by the San Antonio Fire Department. However, to establish a *prima facie* case of discrimination, plaintiff is required to establish that a similarly situated employee under nearly identical circumstances was treated more favorably. This requires more detail than Fuentes has provided. That these two employees shared the same general employer is insufficient.

Accordingly, Fuentes and McEnery were not similarly situated or employed under nearly identical circumstances. While McEnery was undoubtedly treated more favorably than Fuentes, the differences between them—their different work responsibilities and the dissimilar circumstances of their violations—seem to account for this disparate treatment. Further, Fuentes has presented no comparisons to other employees outside the class that were treated more favorably. Fuentes can, therefore, point to no evidence to establish an essential element of *prima facie* Title VII discrimination claims: that a similarly situated employee was treated more favorably under nearly identical circumstances. Therefore, the Fire Department is entitled to summary judgment regarding the Title VII claims.

---

[2] Fuentes did testify that he worked with McEnery at Fire Station 6 "for a while," but this does not establish similar job duties or responsibilities within the Fire Department. Fuentes Depo. [ECF No. 24-2] 39.  Further, there is no evidence that during this time, whenever it was, that McEnery and Fuentes reported to the same supervisor.

> ### iii. There is no issue of material fact that the Fire Department had a legitimate, nondiscriminatory reason, and there is no evidence of pretext.

Even assuming plaintiff *could* establish a *prima facie* case of discrimination, the Fire Department can pass its burden to articulate a legitimate, nondiscriminatory reason for its actions here. As defendant correctly notes, the summary judgment evidence establishes that the Fire Department had a legitimate business reason for placing Fuentes on administrative duty. Summ. J. Mot. 10. Specifically, the job requirements of first responders and fire personnel are stressful and physically demanding, and "a healthy work force is clearly necessary to allow responders to perform their jobs in an effective manner." Summ. J. Mot. 10. Indeed the December 14, 2010 General Order specifically states that the program was "designed to provide early detection of serious medical conditions and encourage better health, thereby allowing [Fire Department] employees to do their job more safely and effectively." Exhibit A-1 [ECF No. 21-2]. The series of tests and examinations allows the Fire Department to diagnose medical problems that may exist within its workforce and determine whether those conditions effect an employee's ability to perform. By imposing a mandatory, but facially neutral order, the Fire Chief sought to encourage a healthier and more efficient fire department.

The Fire Department argues that Fuentes' failure to comply with the order was insubordinate and risked the well-being of fellow firefighters and the general public. Indeed, an employee who has not passed these tests may be at increased risk for injury if they are asked to perform particularly strenuous duties while on a call. Similarly, they may be unable to perform those duties, forcing additional strain on other members of the Fire Department. Allowing Fuentes to continue on in a normal role when he had not complied with the Wellness Program could potentially jeopardize Fuentes, other Fire Department employees, or the general public. Similarly, Fuentes'

multiple refusals constitute insubordination. Either of these constitute a legitimate, nondiscriminatory reason for assigning Fuentes to alternate duty.

Fuentes would then carry the burden of proving by a preponderance of evidence that these legitimate reasons were not the true reasons, but were merely pretext. *Burdine*, 450 U.S. at 53. To establish pretext, Fuentes must show that the proffered explanation is false or unworthy of credence. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011) (quotations omitted). As evidence of pretext, Fuentes points again to the disparate treatment between McEnery and Fuentes. Resp. 6-7. Specifically, Fuentes points to e-mails between McEnery and Chief Martinez in which Martinez states a decision was made to waive the stress test for McEnery. Resp. 7; Horan Depo. 31. According to the e-mails, McEnery was allowed to stay on his normal duties because the wellness doctor conducting the tests had recently resigned. Martinez E-Mail [ECF No. 24-3] p. 32. Further, since McEnery had completed all other tests, the stress test was waived for McEnery while an EEOC determination was pending. *Id.*

These e-mails do not establish pretext. The evidence here offers no indication that the stated reasons for putting Fuentes on administrative duties—noncompliance with the Wellness Program—were false. To the contrary, McEnery's treatment reaffirms that the decisions to place employees on administrative duties were entirely linked to compliance and the safety of Fire Department employees. McEnery refused to comply with the Wellness Program in March 2011, but was not placed on administrative duty because he had filed an EEOC complaint and because 1,600 employees had still not completed the program. At the time Fuentes was placed on administrative duty, February 2012, most employees had been scheduled for exams, and Fuentes had not filed his EEOC complaint. Aff. Horan 3. That complaint was filed in April 2012, and he was placed back on operational duty after he agreed to comply with the Wellness Program in May

2012. However, when Fuentes was not compliant he was placed back on administrative duties in June 2012. Each of these actions were immediately prompted by compliance or noncompliance with the program.

Simply put, there is no evidence that the Fire Department's reasoning was false. And there is similarly no evidence that Fuentes' national original was in any way a factor in these decisions. Fuentes has failed to create a genuine issue of fact regarding either the falsity of the Fire Department's stated reason or that discrimination was the actual reason. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 516-17 (1993). Accordingly, the Fire Department is entitled to summary judgment on Fuentes' Title VII claims.

### b.  GINA

Under GINA, it is unlawful for an employer to request, require, or purchase genetic information with respect to an employee or their family, with some exceptions. 42 U.S.C. § 2000ff(b). This includes information regarding the manifestation of a disease or disorder or genetic testing, such as analysis of DNA, RNA, chromosomes, proteins or metabolites that detects genotypes, mutations or chromosomal changes. *See* 42 U.S.C. § 2000ff(4), (7); 29 C.F.R. § 1635.3(f)(3), (4). However, genetic tests do not include analysis of proteins or metabolites that do not detect genotypes, mutations, or chromosomal changes. *Id.* Further, genetic information is not the same as medical information. *See* 42 U.S.C. § 2000ff-9.[3] The following tests are not genetic tests:

---

[3] "An employer, employment agency, labor organization, or joint labor-management committee shall not be considered to be in violation of this chapter based on the use, acquisition, or disclosure of *medical information that is not genetic information* about a manifested disease, disorder, or pathological condition of an employee or member, including a manifested disease, disorder, or pathological condition that has or may have a genetic basis." 42 U.S.C. § 2000ff-9 (emphasis added).

- An analysis of proteins or metabolites that does not detect genotypes, mutations, or chromosomal changes;
- A medical examination that tests for the presence of a virus that is not composed of human DNA, RNA, chromosomes, proteins, or metabolites;
- A test for infectious and communicable diseases that may be transmitted through food handling;
- Complete blood counts, cholesterol tests, and liver function tests;
- Tests for the presence of alcohol or illegal drugs, or tests for a genetic predisposition to alcoholism or drug use.

29 C.F.R. § 1625.3(f)(3), (4).

Also, GINA includes an exception for employer wellness programs. An employer may request genetic information if (1) the employer offers a health or wellness program, (2) the employee provides voluntary and written authorization, (3) the employee and licensed health care professional receive individually identifiable information concerning the results, (4) and any individually identifiable genetic information is only available for purposes of the health or wellness program and must not be disclosed to the employer except in the aggregate. 42 U.S.C. § 2000ff-1(b)(2)(A)-(D).

Fuentes claims that the Fire Department violated GINA by requiring Fuentes to provide "personal health information without voluntary and written authorizations." Compl. 4. But GINA only applies to genetic information, not "personal health information," and there is no evidence that plaintiff was required to submit to genetic testing or to release family medical history in violation of GINA. The December 14, 2010 General Order required each firefighter to undergo a medical exam to include a medical history, a physical examination, blood tests, urinalysis, a vision test, a hearing test, a lung capacity test, a chest x-ray (every five years), and a stress test. However, there is no evidence that any of these tests—including the blood tests—involve an analysis of human DNA, RNA, chromosomes, proteins, metabolites, genotypes, mutations, or chromosomal

changes. Accordingly, Fuentes has not passed his burden to raise a genuine issue of material fact regarding a GINA violation. Accordingly, the Fire Department is entitled to summary judgment regarding the GINA claims.

Further, there is no evidence that Fuentes was *required* to release genetic information or family medical history. Even assuming Fuentes voluntarily authorized the collection of genetic information, there is no evidence of a violation of the wellness program exception, 42 U.S.C. § 2000ff-1. There is no evidence that Fuentes actually provided any genetic information or family medical information. Thus, there is no evidence that any individually identifiable information was released to anyone other than the licensed health care professionals or disclosed in any manner other than aggregate terms allowed by GINA. Ultimately, because there is no evidence that any of the information collected by the program was genetic information, there is no evidence that GINA is even implicated here. Accordingly, the Fire Department is entitled to summary judgment regarding the GINA claims.

### c.   Retaliation

Fuentes also claims that his noncompliance with the wellness program resulted in retaliation in violation of GINA, 42 U.S.C. 2000ff-6(f). That provision states that:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this chapter.

42 U.S.C. § 2000ff-6(f). To set out a *prima facie* case for retaliation, a plaintiff must establish that 1) he engaged in a protected activity, 2) an adverse employment action occurred, and 3) a causal link between the protected activity and the adverse action. *See Ortiz v. City of San Antonio Fire*

*Dept.*, 806 F.3d 822, 827 (5th Cir. 2015); *David v. Fort Bend County*, 765 F.3d 480, 489-90 (5th Cir. 2014). A protected activity includes the opposition of an unlawful employment practice or filing a charge or participating in a hearing for the unlawful practice. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000). However, a vague complaint that does not reference a discriminatory practice does not constitute a protected activity. *Carter v. Target Corp.*, 541 Fed. Appx. 413, 418 (5th Cir. 2013).

Fuentes argues that he complained of violations of GINA and was subsequently assigned to punitive administrative duty assignments. Resp. 12. However, the July 20, 2011 letter to Chief Horan generically objected to the Wellness Program as an invasion of privacy without reference to GINA. ECF No. 24-3 p. 43. Fuentes claims that he also engaged in a protected activity when he complained of GINA in a July 28, 2011 complaint. Resp. 12. However, the Court finds no evidence of a July 28, 2011 complaint or that Fuentes ever specifically referred to a discriminatory practice under GINA before he was placed on administrative duty in February 2012. Further, there is no evidence that Fuentes was involved in any investigation or hearing under GINA prior to his placement on administrative duty in February 2012. Accordingly, Fuentes' purported July 2011 complaints were not protected activities.[4]

Fuentes also argues that his April 18, 2012 EEOC complaint constitutes a protected activity. But while Fuentes' EEOC complaints did include references to GINA violations, those complaints were filed in April 2012, months after Fuentes was placed on administrative duty. Therefore, assuming the EEOC complaints are a protected activity, there is no causal link between

---

[4] Further, even if these July 2011 complaints were sufficiently detailed, Fuentes was not placed on administrative duty until six months later, immediately after he refused to comply with the Wellness Program. Thus, even if they were protected activities, there is no causal link between those July 2011 complaints and the February 2012 action.

the protected activity and the adverse employment action because the adverse action occurred *before* the protected activity.

Finally, Fuentes argues that his refusal to participate in the Wellness Program was a protected activity under GINA. Presumably, this stems from the language quoted above that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [GINA] . . . ." 42 U.S.C. § 2000ff-6(f). However, as noted above, there is no evidence that the Wellness Program included any practice unlawful under GINA. Therefore, Fuentes' opposition to the program is not protected, and his subsequent placement on administrative duties cannot constitute retaliation.

Accordingly, Fuentes cannot establish a *prima facie* case for retaliation under GINA.[5] The Fire Department is therefore entitled to summary judgment regarding the retaliation claims.

## V.  CONCLUSION

Fuentes has failed to establish essential elements for his Title VII, GINA, and retaliation claims. While he was subject to an adverse employment action, Fuentes has presented no evidence that similarly situated employees outside of a protected class were treated more favorably under nearly identical circumstances. Similarly, Fuentes presented no evidence that the Fire Department lacked a legitimate, nondiscriminatory reason or that its purported reason was false and merely a pretext for a discriminatory reason. Thus, the Fire Department is entitled to summary judgment on the Title VII claims.

---

[5] Even assuming that Fuentes could establish a *prima facie* case, the Fire Department has established a legitimate nondiscriminatory reason for its decision to place Fuentes on administrative duty. Further, as noted above, Fuentes has failed to present evidence of pretext. Finally, the timing of Fuentes' placement on administrative duties shows that the motive of the Fire Department was to ensure compliance with the Wellness Program. For example, Fuentes was not placed on administrative duty immediately upon his letter complaining of the program. Rather, he was placed on administrative duty after he refused to comply with the make-up scheduling.

Fuentes also failed to present evidence that the Wellness Program was unlawful under GINA. Similarly, there is no evidence that Fuentes was placed on administrative duties in retaliation for a protected activity under GINA. Accordingly, the Fire Department is also entitled to summary judgment on the GINA and retaliation claims. Therefore, defendant's motion for summary judgment will be granted.

A separate order shall issue.

Royce C. Lamberth
United States District Judge

DATE: 3/7/17